## Paul's Executors *versus* Paul.

In equity, the personal representatives of a widow, entitled to dower in her deceased husband's lands, may have an account of the rents and profits thereof, although dower was not assigned in her lifetime, and no proceedings were instituted for that purpose.

An election by the widow, filed in the Orphans' Court, not to accept a provision made for her by the will of her husband, is a sufficient demand of her dower, to enable her personal representatives, after her decease, to maintain a bill in equity, for an account of the rents and profits.

APPEAL IN EQUITY from the Common Pleas of *Bucks county*.

This was a bill in equity by Nathaniel F. Kinsey and Stephen Foulke, executors of Mary Paul, deceased, against Joseph Paul, for the specific performance of an agreement to pay to their testatrix, the sum of $200 *per annum*, in lieu of her dower in certain lands devised by her deceased husband, Joseph Paul, to the defendant.

The bill set forth that Joseph Paul, the husband of the plaintiff's testatrix, was, in his lifetime, and while he was married to the said Mary Paul, seised in fee of a certain tract of about 120 acres of land in Bucks county, and died seised of the same; that by his last will and testament, he devised the said farm to his nephew, Joshua P. Lloyd, the defendant (on condition that he changed his name to Joseph Paul), charged with an annuity of $200 in favour of his widow; that he died on the 30th November 1857, leaving a widow and two nephews surviving him; that the defendant, having changed his name, entered upon and took possession of the land devised, by virtue of the will, and had ever since remained in possession; that the widow filed, in the Orphans' Court of Bucks county, on the 10th March 1858, a paper writing, of which the following is a copy :—" In the matter of the last will and testament of Joseph Paul, late of Warrington township, deceased. And now, to wit, this third day of February 1858, Mary Paul, widow of the said Joseph Paul, deceased, comes into the Orphans' Court of Bucks county, and elects not to accept of the provisions made in the last will and testament of the said Joseph Paul, made in her behalf, but claims to take such estate as she may be entitled to in case the said Joseph Paul had died intestate." The bill further alleged that, by virtue of her said refusal to take the annuity and bequests given to her in the said will, she became lawfully entitled to the absolute possession and enjoyment of one-third part of the real estate so devised, as her dower therein, as well as to one-third part of the rents and profits of such freehold estate, from the time of the testator's death to the death of Mary Paul; and that she, by herself and agents, applied to the defendant, and requested him to discover the said estate and title thereto,

and to account for and pay to her the one-third part of the rents and profits of the same since the death of her said husband, and let her into the absolute possession of her one-third part as and for her dower, &c.   That the said Mary, in her lifetime, entered into an agreement with the said defendant, that in consideration of her releasing the estate so devised from all claim of dower, he, the defendant, would pay the annual sum of $200 during her life, to commence at the death of her husband; that an article of agreement to that effect was drawn up by the defendant's counsel, but was not executed in consequence of her death.   That the said Mary, in consequence of this agreement, was induced to suspend any proceedings in law or equity for the recovery of her dower, as she intended to do.   That the said Mary died on the 29th of April 1859, leaving a will, in which the complainants were appointed executors; and that they duly proved her will, and took out letters testamentary, on the 1st June 1859.

The bill then prayed that the defendant might be decreed specifically to perform the said agreement, and pay the complainants the sum of $200, as agreed upon, for the release of their testatrix's dower, &c., and that the said complainants might have such farther or other relief as the nature and circumstances of the case might require, &c.

The defendant, by his answer, admitted the widow's title to dower in the lands devised; but denied that any formal demand had been made to put her in possession of her dower, or that any such agreement had been entered into, as stated in the complainants' bill.

The cause was heard on bill and answer; and the bill was dismissed with costs, the following opinion being delivered by SMYSER, P. J.:—

"This cause came on to be heard on bill and answer.   The bill alleges that Joseph Paul, the husband of complainants' testatrix, died seised of the premises therein described, having by his last will and testament devised the same to the defendant, his nephew, charged with an annuity of $200, in favour of his widow, the said Mary Paul; that the said testator died on the 30th of November 1857, leaving his said widow, and two nephews, viz., the defendant and one Joshua P. Lukens, surviving him; that the said defendant entered upon and took possession of the land devised, by virtue of the will, and has ever since remained in possession; that the widow, by writing filed in the Orphans' Court of Bucks county, duly renounced the provision made in her favour by said will, and signified her election to take her dower in her husband's lands of which he died seised as aforesaid; that the said Mary Paul, widow, frequently, in her lifetime, applied to the said defendant, requesting him to discover the said freehold estate of which her said

husband died seised, and his title thereto, and to account for and pay to her the one-third part of the rents and profits thereof, to which she was entitled as her said dower, and to assign and let her into the absolute possession and enjoyment of the one-third part of said freehold, as and for her dower therein ; that afterwards she, the said Mary Paul, entered into a contract and agreement with the said devisee, by and according to which it was mutually agreed, that the latter should pay her the sum of $200 annually, to commence at the death of her said husband, in consideration of her release of the land so devised from all claim of dower on her behalf; that said agreement was reduced to writing, but never signed, by reason of the death of the said Mary Paul before the same was done ; that the said Mary Paul was, in consequence of this agreement, induced to suspend any proceedings in law or equity for the recovery of her dower in her said deceased husband's lands ; that she died testate on the 29th of April 1859, and that complainants are her executors ; and, therefore, praying the court that the defendant may be decreed specifically to perform the said agreement, and to pay to the complainants, as the executors of the said Mary Paul, the sum of money thereby stipulated and agreed to be paid to her as the consideration of the release and relinquishment of her dower, to wit, the sum of $200 per annum, from the date of her husband's death to that of her own. The bill also contains a prayer for general relief.

" The answer of defendant, which, being sworn to, and not contradicted by the testimony of two witnesses, or what is equivalent to two, must, according to equity rules and practice, be taken to be true, admits the truth of the preliminary recitals and allegations in the bill ; and that the said Mary Paul, in her lifetime, did, by herself and her agents, endeavour to effect an agreement of compromise, by which she should receive a certain annual sum in lieu of her dower; but wholly denies that any such agreement as the one set forth in the bill or any other, ever was made and entered into. The answer also admits, that the said Mary Paul did demand of the said defendant, that he should pay to her certain sums in consequence of her right of dower in the land devised to him, and, in various ways, made known to him that she had a claim upon the said real estate for dower, at common law, and that she would enforce her right thereto, unless the same should be amicably arranged, but denies that she ever demanded of him her right of dower therein, or made a formal demand to be put in possession of a third part of said real estate, to be held by her as her right of dower.

" This state of facts of course puts an end to all claim for the specific relief prayed for, and disposes of the prayer to that effect; for the rule in equity is, that where the sworn answer expressly denies the material allegations of the bill, upon which the equity

arises, the court will neither make a decree nor send it to a trial at law, unless the denial by the answer is contradicted by the testimony of two witnesses. In such a case there must be, in addition to the complainants' own allegations in the bill, the testimony of another witness, or corroborating circumstances equivalent thereto, to overbear the defendant's answer. Until that is done, it is oath against oath, leaving the case to stand *in equilibrio ;* and where that is the case, a chancellor always refuses to make any decree : Eberly *v*. Groff, 9 *Harris* 256, and the other cases cited in note to *Brightly's Equity*, § 720.

" The granting of the specific relief prayed for being thus put out of the question, we have next to inquire what redress, if any, the complainants can have under the prayer for general relief. Their counsel asks us to direct an account of the rents and profits to be taken, for the period intervening between her death and that of her husband ; and to decree that the one-third thereof be paid to complainants, as her personal representatives, as arrears of dower due to her at the time of her decease ; or, more correctly speaking, as damages for its detention.

" Are they entitled, on the facts admitted or not denied, to this ? In other words, does the right to have such damages survive and descend to a widow's personal representatives, where she dies before assignment of dower, and before action brought, or judgment recovered or decree made in her favour, as to her legal right to dower ?

"If a proper demand had been made by her in her lifetime, upon the heir, or *terre tenant*, to have her dower assigned her, a further question might arise, as to whether that would suffice, without suit, to preserve to her executors the right to recover damages as for arrears. But, although the bill alleges something of the kind, the answer denies it ; and that which the answer does admit, does not amount to a formal and legal demand. A demand to have money paid her on account of dower, before assignment thereof, in any way, or by any process whatever, is not a demand to have her dower assigned. It is a claim for that which follows as a right for the performance of a previous act upon which it arises and depends, not for the performance of the act itself. Peradventure, when her dower came to be assigned, it might have been set out to her by metes and bounds, in which case she would have entered and taken the profits, and would have had no claim for money in lieu of profits ; or the *terre tenant* might have given her the third of the crops. And as to her renunciation in the Orphans' Court, the effect of that was only to place her, in regard to her right of dower, where she would have been, if there had been no will ; but was in no sense, a demand pursuant to that right, to have a distinct specific act, viz., the assignment of her dower, done. So far as that goes, then, she has advanced no

further in and towards the ascertainment of her dower, than if her husband had died intestate. There being no demand, therefore, the question just stated, is before us in its integrity.

"At common law, the widow recovered no damages for detention of dower. The hardship of this was remedied by the Statute of Merton, 20 *Hen.* 3, ch. 1, by which, and the construction since given. to it, she shall recover damages in her writ of dower, from the time of the death of her husband, as to all lands of which he died actually seised. If the judgment was by confession or default, a writ issued to deliver seisin, and inquire of the damages; if by verdict, the same jury inquired as to the dying seised, and the damages; or if this last was omitted, a writ of inquiry issued for the purpose: Seaton *v.* Jamison, 7 *Watts* 538. In all this there is no difficulty; but as the claim for damages for detention of dower is in the nature of a personal action, and dies with the person (as all personal actions do, which are not saved from the common law rule, by some special or general enactment), the remedy would be gone at law, whenever the widow died before judgment: 1 *Story's Eq. Jur.*, § 625; and note (1.) to § 628.

"But in such cases, a court of equity will entertain a bill for relief, and decree an account of rents and profits in favour of the widow, where the *legal* right to damages is not gone at the time of filing the bill: *Id.* § 625. In Seaton *v.* Jamison, above cited (page 536), a query is suggested by Judge KENNEDY, whether, owing to the absence of general chancery jurisdiction in our state at that time, a writ of *scire facias* might be sustained to assess the damages, founded on a judgment in dower confessed or recovered, where the demandant died after judgment and before assessment, or whether the remedy for the damages would even then die with the person. The chancery rule, as expressed in Curtis *v.* Curtis, 2 *Bro. Ch. Cas.* 620, is however recognised, that in *such a case*, there might be a recovery in equity in favour of her personal representatives. In Sandback *v.* Quigley, 8 *Watts* 464, Judge ROGERS, noticing the leading cases on this subject, seems to have arrived at the conclusion, that equity would decree an account of profits on behalf of the personal representatives of the widow, even where she died before having established her right to dower; and this is the case mainly relied on by complainants' counsel, to show their right to a decree here. It is to be observed, however, in relation to that case, that the learned judge is speaking of a case where the enjoyment of her dower by the widow is prevented by the wrongful act or deforcement of the heir or feoffee. This case is free from that feature; for it does not appear that the defendant, or any one else on his behalf, ever refused to assign it, when called on, or interposed any obstacle or objection to her ascertainment and enjoyment of her right. The parties were in a course of negotiation, for a composition on terms of mutual advantage, looking

to a discharge of the land; they unfortunately failed to agree upon the terms of the arrangement before her unlooked for death broke off the negotiation. It does not appear, that the defendant made the first overture to the treaty, or that he in any wise whatever was instrumental in vexatiously, wrongfully, or improperly keeping this widow out of her dower, or in inducing her to delay action in the question of her right.

"It is to be remarked further, in regard to this case, that as subsequently explained in Conklin v. Bush, 8 *Barr* 518, it is perfectly consistent and reconcilable with the doctrine of that case, which is, that although where a widow dies after judgment and before damages are assessed at law, her personal representatives cannot claim them at law, yet *equity* will, in such cases, entertain a bill for her relief; provided there has been judgment in dower in her favour, and the right to recover damages thus ascertained, but she dies before they are assessed; but if she dies before judgment, then the right to have the damages assessed dies with her. This case is clear and full to the point, and in my opinion, is decisive against the demandant.

"In New York, a similar doctrine prevails, except that it extends not only to the case where the widow dies before judgment but after suit brought. Thus, in Johnson v. Thomas, 2 *Paige* 377, it was decided, that if the doweress dies before her right is established, her personal representatives have no remedy either for costs or mesne profits; but, if the husband died seised, her death pending a suit in the court for her dower, will not in equity deprive her representatives of the arrears due at the time of her death.

"In North Carolina, the rule was held in accordance with that of this state, as expressed in the case in 8 *Barr*, just cited: Whitehead v. Church's Heirs, 1 *Murph.* 128.

In Maryland, where a widow makes no demand before death, her claim to rents and profits is gone: Steiger v. Hillen, 5 *Gill & Johns.* 121; Sellman v. Bowen, 8 *Id.* 51, and Rickard v. Talbird, *Rice's Eq.* 159, are cases also going to show that the right to recover mesne profits is a consequence of the establishment of the right to dower.

"As the law is now understood in Pennsylvania, the Orphans' Court has exclusive jurisdiction in matters of dower in lands of which the husband died seised and possessed, and an action of dower would not be sustained; but it is not perceived that that varies the question, so far as the point of survivorship is concerned. It is a general principle, applicable to all equity jurisdictions, that where the law gives neither right nor remedy, equity cannot assist. It is suggested by the Master of the Rolls, in Curtis v. Curtis, that, in the case of a demand, the recovery of which has been prevented by a difficulty unconscientiously interposed by another person,

equity would relieve against him on that ground; but I have already shown that no such unconscientious interference is attributed or attributable to the defendant here.

"The whole matter may be summed up thus. By the statute of Merton, the widow is entitled to damages when her husband died seised. These damages might be assessed, either by the jury that passed upon the issue as to her right to dower, or, after judgment of seisin, might have been assessed on a writ of inquiry or *scire facias*. These are distinct judgments, although, where the same jury assess, they may be entered at the same time. Error will lie to the first judgment separately, and before proceedings taken to have the second; and the second may be reversed without prejudice to the first: 1 *Roper on Husband and Wife*, part 2, 441; 32 *Law Lib.* 264–5; 2 *Bacon's Abr.* 151; and this, because the one is a *real* action, lying at common law, and the other a personal demand only, founded on the statute, and, like damages in trespass, dies with the person. If the tenant dies after judgment that the demandant recover seisin, and before the second judgment is obtained for damages and costs, under the statutes of Merton and Gloucester, they are gone at law, by his death, and no *scire facias* will lie against his heir, to obtain a writ of inquiry of them. And upon the same principle, if the demandant had died before assessment of her damages and costs, either upon writ of inquiry or otherwise, her executor or administrator would not have been, at law, entitled to a *scire facias* for them: *Id.* 442; *Rob. Dig.*, tit. Dower, p. 181.

"But in such cases, equity will entertain a bill and grant relief for the damages, on the ground that the legal right to them has been established at law, by the judgment in dower; so that there is a legal right without a corresponding legal remedy—an appropriate case for the interposition of equity. This is the only case in which the English chancery will interpose in behalf of the personal representative; and the case of Conklin *v.* Bush is express, that equity will only interfere in the same cases and upon the like conditions which would warrant the aid of a court of chancery in England; and that that is the true meaning and extent of the case of Sandback *v.* Quigley. But where the demandant dies pending the action of dower, and before judgment, it is said, in both the cases last referred to, that the action is at an end, and cannot afterwards be sustained in any form. *A fortiori* is this the result, where she dies before claim made or action brought. The reason is manifest. The action of dower can be no further proceeded with, because its object is to put the widow into possession of the third part of her husband's lands, which, by her death, is made impossible; and her right so to be put in possession, not having been determined by the legal judgment of any tribunal,

there is nothing to sustain the claim for damages under the statute, so as to transmit it, by survivorship, to the personal representative.

"The case then becomes one which is alike without remedy or right at law, as to the damages; and, as we have seen, in such a case, equity never interposes, however hard it may be. It is unnecessary to say how it would be, if the devisee had thrown any impediment unconscientiously in the widow's way, so as to deter or prevent her from originating earlier, or prosecuting more promptly, her remedy; for there is nothing of the sort in this case. It is true, that if the tenant of the freehold does not assign dower on demand, although he does not refuse it, it is a refusal in law, so as to entitle the widow to damages, because it is a virtual deforcement within the statute: 2 *Bac. Abr.* 150 n. But that relates to her right to recover them by adversary proceedings *durante vita*, and has no relation to the question here raised and under discussion; and besides, as we have seen, the record does not show a demand to have dower assigned.

"It must be confessed, that what is said in *Roper on Husband and Wife* 454–5, would seem to warrant the aid of a court of equity in favour of the personal representatives of a deceased widow, or against those of a deceased tenant of the freehold, in all cases, without regard to the time of the decease; but we must take the limitation prescribed by our own courts, which are clearly set forth in the case of Conklin v. Bush. Nor will the rule, as there laid down, interfere with the widow's right to come into a court of equity in the first instance, and ask by bill to have her dower assigned and her damages allowed. It is only intended to apply where, instead of pursuing that course, she either takes no proceedings at all, or, having gone into a common law court, dies before judgment *quod habeat seisinam;* which is the present case. Inasmuch as in either of those contingencies the legal right to damages is gone, having died with the person, the language of Judge Story, in his Commentaries (§ 625), when he says, that if a widow die before assessment of damages, a court of equity will entertain a bill for the relief of the personal representatives, "provided, at the time of filing the bill, the legal right to damages is not gone," must be taken as referring to their being gone in some other way; otherwise the whole rule would be destroyed and rendered nugatory by the qualification annexed. There are various other modes in which this legal right may be gone. Thus, if the jury omit to find that the husband died seised, because the statute only gives damages in such cases prior to demand; or if no demand has been made by her, for the heir is not bound to assign this provision till demanded, because the law casts the freehold of the whole upon him, which he cannot divide without the concurrence of the wife; or, if the heir or feoffee assign dower, and the wife accepteth thereof, because, having her dower, which

is the principal, she cannot sue for the damages, which are but consequential or accessory; or, if *tout tem prist* be pleaded, and it is found for the tenant; or perhaps (although that is not so clear) if the statute of limitations intervene: 2 *Bac. Abr.* Dower 149. Thus understood, there is no difficulty in reconciling what is said by Mr. Story, with the doctrine of our own courts on the subject.

"It remains to notice the 28th section of the Act of 24th February 1834, to which the plaintiffs' counsel has referred us. That section authorizes executors and administrators to commence and prosecute all personal actions which the decedent, whom they represent, might have commenced or prosecuted, except actions for slander, libel, and wrongs done to the person. The commissioners to revise the civil code, by whom the Act of 1834 was reported, say that it was their intention to place *all other* actions upon the same footing, both as to the right and the form of action, after the death of the party as before. As far as the *surviving* of the action, then, is concerned, the plaintiffs are not precluded of their remedy by the death of their decedent; and yet it is recognised as clear law, both in Sandback *v.* Quigley, and Conklin *v.* Bush, that by the death of the widow before judgment of seisin in an action of dower, or decree in a court of equity, the personal representatives can enforce no remedy for damages by way of arrears, either at law or in equity. This is, manifestly, on the ground that the legal right and remedy were gone at the time of the filing of the bill; that at that stage of the proceedings, and in that relation of the parties, there was no right of action at all, even in the decedent; and, of course, there is nothing for the statute to transmit to the executors or administrators. Be the reason what it may, both cases are clear and decisive, that the legal remedy is gone; and I have already sufficiently discussed the conditions under which equity will then interpose.

"Lastly, and this consideration, though last presented, is not least in importance, the plaintiffs have, by their own statements in their bill, stated themselves out of court, so far as the point we are now on is concerned; for they allege an express agreement in lieu of dower, which they ask to have enforced, which allegation is inconsistent with a claim for arrearages of dower. They themselves allege a forfeiture of all pretensions to dower; for it needs no words to show that such a composition agreement as is alleged by them, would be fatal to any claim for dower, or arrears of dower, and that their remedy would be only on the agreement itself.

"The position of the parties complaining is just this. They allege a contract, and introduce the original right of dower, and demand, such as it was, made under it, to show the inducement and consideration of the contract. There is a prayer for special relief, to wit, a decree for specific performance; and the usual

[Paul's Executors v. Paul.]

prayer for general relief. To make a decree, under the general prayer, for the payment of the arrears of dower, would be inconsistent with the special relief asked, as well as with the case made by the bill. But this cannot be done consistently with the rules of equity practice. In 1 *Daniel's Ch. Pr.* 490, the rule on this subject is thus stated: 'Although where the prayer does not extend to embrace all the relief to which the plaintiff may at the hearing show a right, the deficient relief may be supplied under the general prayer, yet such relief must be consistent with that specifically prayed, as well as with the case made by the bill; for the court will not suffer a defendant to be taken by surprise, and permit a plaintiff to neglect and pass over the prayer he has made, and take another decree, even though it be according to the case made by his bill.' And therefore, in Williams v. Shaw, 3 *Russ.* 178 n., as the case is stated by Daniel (*ubi supra*), where a vendor filed a bill for specific performance against a purchaser who had been in possession under the contract for several years, but failed in establishing his right to specific execution, by reason of a defect in his title, the court refused, under the prayer for general relief, to direct an account of the rents and profits against the purchaser, although he had stated, by his answer, that he was willing to pay a fair rent. And so, in Legal v. Miller, 2 *Ves. Sr.* 299, where a bill was filed for the specific performance of a written agreement, and parol evidence was read to prove a variation from it, the bill was dismissed with costs, the plaintiff not being allowed to resort to the substantial agreement, proved on the part of the defendant. And, in Grimes v. French, 2 *Atk.* 141, where a bill was brought for an annuity or rent-charge under a will, Lord Chancellor HARDWICKE would not permit the plaintiff's counsel, on the hearing, to drop the demand for the annuity, and insist upon the land itself. See, also, for further illustrations of this principle, the cases of English v. Foxall, 2 *Pet.* 611–12; Palk v. Lord Clinton, 12 *Ves. Jr.* 48, and notes; Hiern v. Mill, 13 *Id.* 119; Jones v. Jones, 3 *Atk.* 111; *Story's Eq. Pl.*, §§ 40, 41; *Brightly's Eq.*, §§ 550, 551, and cases referred to; Thomas v. Ellmaker, 1 *Pars.* 99.

"Relief will not be granted for matters not forming portion of the charging part of the bill, although they may be apparent from other portions of the pleadings in evidence: *Story's Eq. Pl.*, § 257; *Brightly's Eq.*, § 551. The allegations so relied on must not only be such as to afford a ground for the relief sought, but they must have been introduced into the bill for the purpose of showing a claim to relief, and not for the mere purpose of corroborating the plaintiff's right to the specific relief prayed for: 1 *Daniel's Ch. Pr.* 492; Stevens v. Guppy, 3 *Russ.* 171. In this last case, a vendor who had filed a bill for specific performance against his vendee, but could not make out sufficient title in himself, and therefore failed in obtaining a decree, was refused, under

the general prayer, an inquiry into the management of the property during the time vendee had it in possession, although the bill did contain charges of mismangement, which, however, had been introduced merely to show acceptance of title by defendant, and not with a view to obtain compensation. In a note to Palk *v.* Lord Clinton, 12 *Ves. Jr.* 48, it is said, on the authority of *Story's Eq. Pl.*, § 42, Colton *v.* Ross, 2 *Paige* 396, and Lloyd *v.* Brewster, 4 *Id.* 537, that the court will not, ordinarily, be so indulgent as to permit a bill framed for one purpose to answer another. And if the plaintiff doubts his title to the relief he wishes to pray, the bill should be framed with a double aspect, so that if the court should decide against him in one view of the case, it may yet afford him assistance in another.

" These principles are decisive against any other relief on this bill than a decree for specific performance of the alleged contract; which, we have seen, the plaintiff's cannot have either, because of defect of proof. If there is any other relief in our power, it is neither indicated in the bill, nor was it, on the hearing; and we are aware of none. This difficulty just discussed, is one that is independent of the others previously considered, and is insuperable. It was not noticed on the argument, nor did it suggest itself to my own mind, until the other points, which were made, had been considered; otherwise I should have spared myself the trouble of the previous discussion. The bill is dismissed with costs."

From this decree the complainants appealed to this court.

*Dubois*, for the appellants, cited Sandback *v.* Quigley, 8 *Watts* 463–4; Conklin *v.* Bush, 8 *Barr* 514; 2 *Bac. Abr.* tit. Dower, p. 764; Seaton *v.* Jamison, 7 *Watts* 537; 8 *Id.* 463; *Rob. Dig.* 184; Evans *v.* Evans, 1 *Phila. R.* 113.

The opinion of the court was delivered by

READ, J.—By the 11th section of the Act of 8th April 1833, relating to last wills and testaments, it is enacted " that a devise or bequest by a husband to his wife, of any portion of his estate or property, shall be deemed and taken to be in lieu and bar of her dower, in the estate of such testator, in like manner as if it were so expressed in the will, unless such testator shall, in his will, declare otherwise : provided, that nothing herein contained shall deprive the widow of her choice, either of dower, or of the estate or property so devised or bequeathed." This section is substantially a re-enactment of the 10th section of the Act of the 4th April 1797, and is therefore only a continuation of the then existing law. This dower has been determined by this court in Hinnershits *v.* Bernhard's Executors, 1 *Harris* 518, to be her common law dower, and not her share under the intestate acts.

By the 35th section of the Act of 29th March 1832, relating

[Paul's Executors *v.* Paul.]

to the Orphans' Court, which is a re-enactment of the then-existing law, as found in the 1st section of the Act of 1st April 1811, relative to dower, a method is provided for ascertaining the election by the widow, by a proceeding in the Orphans' Court.

Upon the bill and answer in the case before us, it appears that the plaintiffs' testatrix was the widow of Joseph Paul, who died seised of a farm or tract of land in Bucks county, in which she was entitled to her dower, if she elected not to take the devises or bequests to her, contained in the last will of her husband. Joseph Paul, by his will, devised this farm to his nephew, Joshua P. Lloyd, on condition that he changed his name to Joseph Paul, charged with an annuity of $200 in favour of his widow. The testator died on the 30th November 1857, leaving his widow and two nephews surviving him, and on the 10th March 1858, the widow filed, in the Orphans' Court of Bucks county, her written election not to accept of the provisions made in her behalf in the will of her husband.

It is clear, that there was no dispute, that the widow was legally entitled to dower in this farm, and to the arrears from the death of her husband. It is almost equally clear, that such a demand of dower was made, as would be covered by the authority of Watson *v.* Watson, 10 *Com. B. Rep.* 3. It is also equally clear, that a negotiation was going on between the parties for a release of dower, which of course prevented all proceedings, either in law or equity, on the part of the widow for the time. The widow died on the 29th April 1859, without having instituted any suit, either at common law or in equity, and the question is, have her representatives no remedy for the one-third of the rents and profits of the farm, justly due to her at the time of her decease? If they have not, then the defendant takes this farm, contrary to the will of the testator, freed and discharged of any payment whatever to the widow of his benefactor.

The action of dower has fallen greatly into disuse in England, and its prosecution has become a matter of some rarity there. Courts of equity having established a concurrent jurisdiction with courts of law upon the subject of dower, resort is had to them, as their forms of proceeding present fewer embarrassments than at law, and there all obstacles are removed, which improperly tend to delay or defeat the rights of the dowress.

At law, if the tenant, after the first judgment, which is that the widow shall recover seisin, dies before the second judgment is obtained for damages and costs, under the statutes of Merton and Gloucester, they are gone by his death, and being considered as a personal demand, like damages in trespass, if they be not recovered during the life of the party, they die with him. So also, if the demandant die before the damages are ascertained, the executor shall not have them, for the damages are no duty till

they are ascertained; *Bright on Husband and Wife* 412; *Park on Dower* 309.

"Upon the widow's right to *mesne* profits in equity" (says Mr. Bright, *Id.* 423), "Mr. Roper observes: 'We have seen that at law, *mesne* profits, under the term damages, in the statute of Merton, were lost by the death of the plaintiff or defendant before they were assessed and ascertained. But it is not so in equity. That court has been more liberal to the widow, from the consideration, that the profits of a third part of her husband's real estate, are her only subsistence, from his death. It is therefore the course of the court to assign her dower, and universally, to give her an account of *mesne* profits from the death of her husband, and not to permit her title to them, to be defeated by the death of the defendant *pendente lite.*'"

"Mr. Roper notices (*Id.* 424): 'It has been said that *mesne* profits will be decreed to the widow in equity in instances only, where she has demanded dower in analogy to the rule at law, and the construction of the statute of Merton before considered, and a case of Delver *v.* Hunter, *Bunbury* 57, has been cited to that effect; as also to prove that there shall be no *mesne* profits decreed, except where the husband dies seised of the lands, as required by the same statute. This doctrine, however, seems to be open to objection, for it is presumed that courts of equity do not, in this instance, proceed upon the statute of Merton, or with reference to any legal rule, in decreeing to the widow *mesne* profits; *the principle which they adopt appears to be the title of the widow to endowment immediately upon the death of her husband;* this right drawing to it, an account of the profits of her share received by the person, whose duty it was to have assigned dower, so that such person incurs a debt to the widow, which he in his lifetime, or his representative after his death, is considered in equity as liable to discharge. In addition to this, it may be remarked, that the tenant may probably be considered in equity, as holding the widow's one-third of the estate, as her trustee or bailiff, from the death of her husband, and therefore answerable to her for his receipt of rents, in respect of that proportion of the property.'" This appears to be the correct view of the widow's rights, and is sustained by the tenor of the decisions. The cases of Hamilton *v.* Mohun, 1 *P. Wms.* 122, and of Graham *v.* Graham, 1 *Ves. Sen.* 262, proceeded upon this principle, in allowing the widow in account, her third of the *mesne* profits, although there had been no assignment of dower. Bright says, p. 427, "The circumstance of an assignment of dower not having been made prior to the widow's death, will not deprive her representative of *mesne* profits, nor prevent her right, whilst living, to obtain payment by them in equity." And in the note to 1 *Fonblanque's Equity* 22, it is said: "And though the widow should die before she estab-

[Paul's Executors *v.* Paul.]

lished her right to dower, equity will, in favour of her personal representatives, decree on account of the rents and profits of the lands, of which she afterwards appeared dowable."

The infrequency of an actual assignment of dower is also distinctly stated by Vice Chancellor KINDERSLEY, in the very late case of Dicken *v.* Hamer, 2 *Law T. R.*, (*N. S.*) 276, decided on 7th May last, in which he says: "Suppose this widow's dower had been set out by metes and bounds, which was not done, and which now-a-days hardly ever is done, the parties going on upon the footing that dower, where it exists, is recoverable, but no assignment being actually made of it."

In this state, by the operation of our intestate act, the action of dower is confined to a case like the present, to dower in lands aliened by the husband in his lifetime, or to a claim of statutory dower, where the land is in the possession of one denying her rights, or of one not answerable to the Orphans' Court process. As our courts are clothed with full equity powers, in regard to dower, there can be little doubt that as soon as this simple mode of proceeding is understood, the action of dower will fall into similar disuse here.

In Sandback *v.* Quigley, 8 *Watts* 460, it was decided, that an action of dower abates by the death of the plaintiff, and that there can be no substitution of her personal representatives for any purpose. Judge ROGERS, however, held, that a different rule prevailed in equity, and suggested, as we had no Court of Chancery, that relief might perhaps be given in a special action on the case, by the personal representatives againt the heir or feoffee, or against each or both, for the time they respectively occupied the premises. The case of Conklin *v.* Bush, 8 *Barr* 514, where this opinion of Judge ROGERS, in its full extent, is doubted by Judge COULTER, does not apply to the case now before the court, because here the husband died seised. "It is true," says Judge COULTER, 517, "that in equity, by proceedings in chancery, the administrator can recover *mesne* damages for the detention of dower. But it is only where the husband died seised, and where there is no dispute about the right to recover dower," which is the case here.

But the learned judge clearly erred in confining relief in equity to the single case where there had been judgment in dower, but the widow died before the damages were assessed, and his remarks therefore upon Judge ROGERS' statement of the rule in equity are founded upon a misconception of the authorities.

In the present case, the husband died seised, and the widow's title to dower in the farm devised is not disputed, upon her election not to take under the will. That election was in reality a demand of dower, independent of the other circumstances which showed an actual demand besides. Her right to dower was there-

[Paul's Executors *v.* Paul.]

fore undisputed, but a negotiation ensued to substitute something for it, and this prevented the institution of a suit, either in law or equity.

The widow was clearly entitled either to the bequest by the will of the annuity of $200, to be paid by the devisee of the land, or to her dower out of the same. She elected to take the latter, which was acquiesced in by the devisee, who thus became bound at least to pay her one-third of the rents and profits, if he did not agree with her as to some other mode of payment. No such agreement was made, and he was therefore bound to pay to her representatives what was due to her at the time of her death. The court below was therefore in error in dismissing the bill. The bill and answer are both informal, and perhaps require amendment to meet the justice of the case.

> The decree of the Common Pleas, dismissing the plaintiff's bill, is reversed, and it is now here ordered and decreed, that the defendant do account to the plaintiffs for the dower of the said Mary Paul, deceased, from the thirtieth day of November, A. D. 1857, up to the time of her death; and that the case be referred to a master to take an account thereof, that the plaintiffs may have a decree for the amount found to be due, with the costs; and the cause is now remitted to the court below, that this decree may be there carried into effect.